IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHRISTOPHER DINGESS,

          Plaintiff,

v.                                                        CIVIL ACTION NO. 2:22-cv-00275

THE SYGMA NETWORK, INC.,

          Defendant.

**ORDER**

    Pending before the Court is Defendants Management Specialty Services 109, Inc.'s ("MSS") and Regional Supplemental Services, Inc.'s ("RSS") Motion to Dismiss, Sever and Transfer Venue, (ECF No. 44). For the reasons set forth below, the motion is **DENIED**.

*I.    BACKGROUND*

    This action arises out of a car accident that occurred on March 10, 2022. (ECF No. 28 at 4, ¶ 13). On that date, Plaintiff Christopher Dingess alleges that he was run off the road when a tractor trailer "performed an abrupt, illegal U-turn in front of" him. (*Id.*) The alleged result of this maneuver was that Dingess went "through a guardrail, and into a deep ravine." (*Id.*) Though Defendant The Sygma Network, Inc. is alleged to have owned the truck which caused the accident, Dingess claims the driver was one of "RSS's and/or MSS's agents and/or employees." (*Id.*) Specifically, Defendant Vontize Conerly—an employee of MSS and/or RSS—is purported to have been driving the truck. (*Id.*)

1

Dingess initiated this action by first filing a complaint in Mingo County, West Virginia, which was removed to this Court. (*See* ECF No. 1.) Since then, the complaint has been amended twice. (*See* ECF Nos. 8 and 28.) As such, the case is currently brought under the Second Amended Complaint ("SAC"), which alleges that the accident is the result of all Defendants' negligence. (ECF No. 28 at 7, ¶ 28.) Further, the SAC claims that Dingess experienced "pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, annoyance and inconvenience, permanence of injury, and other damages." (*Id.*) On top of that, Dingess says he underwent medical treatment, incurred medical expenses, lost wages, lost earning capacity, and suffered "other economic damages." (*Id.* at 7, ¶ 29). Now, Dingess seeks damages from Defendants for their alleged roles in his injuries. (*Id.* at 7.)

Then, in its answer to the SAC, Sygma brought crossclaims against MSS and RSS seeking indemnification and contribution from MSS and RSS. (*See* ECF No. 38.) And in return, MSS and RSS levied their own set of crossclaims against Sygma, also seeking indemnification and contribution. (*See* ECF No. 46.)

On March 8, 2023, MSS and RSS filed the pending Motion to Dismiss, Sever and Transfer Venue, (ECF No. 44), in which they seek to (1) dismiss the SAC and crossclaims as to RSS and (2) transfer Sygma's crossclaims against MSS—and if not dismissed, RSS—to the Southern District of New York. Two responses were filed in opposition: one by Sygma, (ECF No. 50), and one by Dingess, (ECF No. 51). MSS and RSS in turn filed two replies, (ECF Nos. 53 and 54). Then, with the Court's leave, Dingess submitted a surreply, (ECF No. 95), to which MSS and RSS responded, (ECF No. 98). Thus, with briefing concluded, the pending motion is ripe for adjudication.

## II. LEGAL STANDARD

### a. 12(b)(2) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(2), a court may dismiss claims against a defendant for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When a non-resident defendant files a motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure challenging the court's power to exercise personal jurisdiction, 'the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence.'" *Felman Prod. v. Bannai*, 517 F. Supp. 2d 824, 827–28 (S.D. W. Va. 2007) (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, "[w]here, as here, the district court addresses the question of personal jurisdiction on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden of making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). "In considering whether the plaintiff has met this burden, the district court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (citation and quotation marks omitted).

"A federal district court uncertain about its personal jurisdiction over a defendant may, in its discretion, grant discovery for the limited purpose of determining whether exercising personal jurisdiction is proper." *Estate of Alford v. Fuji Heavy Indus., Ltd.*, No. 3:15-cv-16449, 2016 WL 756489, at *1 (S.D. W. Va. Feb. 25, 2018) (citing *Carefirst of Maryland, Inc. v. Carefirst*

3

*Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)); *see also Toys "R" Us, Inc. v. Step Two*, S.A., 318 F.3d 446, 456 (3d Cir. 2003) ("If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained.") (internal citations and quotations omitted). "[T]he decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court" and "where ... the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction," the district court is well within its discretion to deny jurisdictional discovery. *See Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 216 n.3 (4th Cir. 2002). Thus, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst*, 334 F.3d at 402.

  b. *Motion to Transfer*

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Such a transfer, however, is dependent upon the "weighing ... [of] a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The Fourth Circuit has established four factors that a district court should consider in deciding motions to transfer under § 1404(a): "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

4

"It is well settled that the decision whether to transfer a matter to another district is committed to the sound discretion of the district court." *AFA Enters., Inc.*, 842 F. Supp. at 908 (citations omitted). "The party seeking transfer carries the burden of showing that the current venue is inconvenient." *See Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 745 (S.D. W. Va. 2010) (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010)).

### III. DISCUSSION

In support of their motion, MSS and RSS make two arguments. First, in support of dismissal, they argue that the Court lacks personal jurisdiction over RSS. (ECF No. 45 at 3-4.) And second, in support of transfer, they say there is a mandatory forum selection clause in their contract with Sygma which dictates that Sygma's crossclaims must be transferred to the Southern District of New York. (*Id.* at 4-7.)

Despite their different objectives, both of these arguments fail for the same reason. Simply put, they rely almost entirely on factual assertions that are contradicted by the SAC and Sygma's crossclaims. Because they are brought in the motion to dismiss stage, such factual disputes are currently inappropriate to consider.

####   a. *Personal Jurisdiction*

Before beginning the personal jurisdiction analysis, the Court believes it is worth noting that—despite being a joint filing—this portion of the motion applies to RSS alone. Thus, to avoid confusion in its holding, the Court will refer only to RSS in this section. With that in mind, the Court turns to the merits of RSS's position.

A federal court sitting in diversity "has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (citation omitted). Therefore, the Court must "first consider whether [West Virginia's] long-arm statute authorizes the exercise of jurisdiction over the defendant." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 134 (4th Cir. 1996). If so, the Court will then determine if the long-arm statute comports with due process. *See Perdue Foods LLC*, 814 F.3d at 188.

Because RSS is a for-profit corporation incorporated under the law of a state other than West Virginia, West Virginia Code § 31D–15–1501(d) applies. As relevant here, that section provides jurisdiction over any such out-of-state corporation if the "corporation makes a contract to be performed, in whole or in part, by any party thereto in [West Virginia]." § 31D–15–1501(d). Here, RSS is alleged to have been doing business in West Virginia pursuant to a contract in which drivers were provided to Sygma to travel along a route which included business in West Virginia. (ECF No. 28 at 2, ¶ 6.) Thus, the contract was performed at least in part in West Virginia. *See Taylor v. Sethmar Transp., LLC*, No. 2:19-cv-770, 2021 WL 4751419 (S.D. W. Va. Oct. 12, 2021) (finding that a delivery contract that required travelling through West Virginia satisfied the state's long-arm statute). This is enough to satisfy the long-arm statute. *See State ex rel. Ford Motor Co. v. McGraw*, 788 S.E.2d 319 (W. Va. 2016).

With that authorization in hand, the Court must now determine whether jurisdiction "is consistent with the due process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp.*, 561 F.3d at 277. Due process is satisfied if a defendant has "minimum contacts" such that to

6

require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Additionally, personal jurisdiction can be either general or specific. General personal jurisdiction is "all purpose" and "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden v. Fiore*, 571 U.S. 277, 284 n. 6 (2014). Meanwhile, specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

This case involves allegations of specific jurisdiction. So for there to be jurisdiction, Dingess and Sygma must show that RSS "purposefully established minimum contacts" in West Virginia such that RSS "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). As such, the question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

In the Fourth Circuit, three factors are considered when assessing specific personal jurisdiction: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397 (quotations omitted). To succeed, a plaintiff must prevail on each factor. *See Consulting Eng'rs Corp.*, 561 F.3d at 278-79.

For the first factor, Dingess and Sygma allege two key facts which together are enough at this stage to show that RSS has purposefully availed itself in West Virginia. First, they assert

7

that Conerly was driving the truck involved in the accident in his capacity as an employee of RSS. (ECF No. 51 at 4.) And second, they claim that at the time of the crash, Conerly was driving pursuant to a June 2020 agreement under which MSS would provide RSS-employed drivers to Sygma for regular operations traveling through West Virginia. (*Id.*)

RSS's response to these allegations is that Dingess's and Sygma's "allegation that RSS FL was a party to the Agreement, or that drivers involved in the alleged accident were RSS FL employees, are simply *false*." (ECF No. 45 at 3 (emphasis added).) But the veracity of the allegations is not at issue yet. Even if it was though, the Court must "resolve all factual disputes in favor of the party asserting jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). So, simply disagreeing with Dingess's and Sygma's factual assertions by claiming they are not true with conflicting evidence is not enough to defeat personal jurisdiction. This—coupled with reading the SAC and crossclaims in the light most favorable to them—leads the Court to find that Dingess and Sygma have certainly pleaded a prima facie showing that RSS has the minimum contacts needed for jurisdiction.

Next, the second factor is easily satisfied. Dingess claims an injury directly resulting from the actions of RSS's employee performing duties related to RSS's contacts with West Virginia. In turn, Sygma's crossclaims center on the same facts. Thus, all claims "arise out of [the] activities directed at" West Virginia. *Carefirst*, 334 F.3d at 397.

Third and finally, the Court examines whether an exercise of jurisdiction would be constitutionally reasonable, that is "the litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *CFA Inst. v. Inst. of Charted Fin. Analysts of India*, 551 F.3d 285, 292 (citations omitted). "The burden on the

8

defendant, interests of the forum state, and the plaintiff's interest in obtaining relief guide [this] inquiry." *Tire Eng'g v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (citations omitted).

The only burden RSS faces is that it is incorporated and has its principal place of business outside of West Virginia. But on the other hand, that fact means that Dingess and Sygma would face an equal burden in litigating elsewhere. Unlike Dingess's or Sygma's, RSS's burden though is mitigated by the fact that "it was reasonably foreseeable that the defendant could be subject to suit" in another state where it conducted business. *CFA Inst.*, 551 F.3d at 296 (citation omitted). Further, there is no indication that RSS would be unable to obtain competent counsel or properly defend itself in West Virginia. *Id.* In short, without more to show a burden, RSS is "not shielded from civil liability" in West Virginia just "because it is headquartered" elsewhere. *Id.* Moreover, West Virginia has a high interest in this case. It involves one the state's citizens who was seriously injured in an accident, thus implicating the "important state interest in protecting the health and welfare of [West Virginia's] citizens." *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 354 (4th Cir. 2005). Lastly, both Dingess and Sygma certainly have interest in obtaining relief. Dingess in particular was allegedly injured and suffered damages as a result of the accident. If his claims are true—which is assumed at this stage—the relief sought is appropriate. Jurisdiction is thus constitutionally reasonable.

After considering these factors, the Court finds that Dingess and Sygma have presented sufficient allegations at this stage to make a prima facie case that specific personal jurisdiction exists over RSS.

  b. *Severance and Transfer*

Moving to the transfer analysis, the Court begins by addressing MSS and RSS's primary argument that there is a controlling forum selection clause requiring a transfer to the Southern District of New York.  (ECF No. 45 at 4.)  As part of this claim, MSS and RSS lay out and apply the standard for transfer in the presence of a forum selection clause found in *Atlantic Marine Construction, Co., Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013).  (ECF No. 45 at 4-6.)  Again though, MSS and RSS's argument runs headlong into a roadblock of disputed facts.  This time, that roadblock consists of the fact that Sygma alleges that its "claims are not made pursuant to an agreement that contains a forum selection clause."  (ECF No. 50 at 5.)

Specifically, Sygma counters MSS and RSS's assertion by pointing out that its claims are "based on the June 2020 Agreement" and "common law."  (ECF No. 50 at 5.)  Thus, as alleged, "no forum selection clause is applicable to Sygma's claims."  (*Id.*)  Now, MSS and RSS certainly disagree with that assessment and instead believe that a later October 2020 agreement governs the claims.  (ECF No. 50 at 2.)  However, this conflict between the parties presents a clear factual dispute not suited for resolution at this time.  Because the pleadings must be construed in favor of Sygma, the forum selection clause's viability as grounds for transfer is foreclosed for now.

Moving on to the traditional transfer analysis, the Court finds that MSS and RSS have not carried their burden to show that the current venue is "inconvenient."  *Leonard*, 718 F. Supp. 2d at 745.  In fact, all four factors weigh against transfer here.

First, for obvious reasons, the weight accorded to plaintiff's choice of venue pushes against transfer. Sygma brought the crossclaims in this venue, and that choice "is entitled to substantial weight in determining whether transfer is appropriate." *Trustees*, 791 F.3d at 444.

Second, witness convenience and access counsels against transfer as well. This is true for several reasons. For one, the events underlying the SAC—and thus the crossclaims—took place in West Virginia. Dingess himself lives in Kentucky, near the West Virginia border. And all of the emergency personnel and medical professionals involved in the accident are likely to be near West Virginia. Finally, as Sygma notes, the "only potential witnesses that would be in New York are the witnesses from MSS and RSS." (ECF No. 50.) On the whole, this makes it much more inconvenient to expect most of the witnesses in the case—including non-party witnesses—to travel to New York than it is to ask MSS and RSS's party witnesses to come to West Virginia.

Third, the convenience of the parties plays out in essentially the same way as the previous factor. The events of the accident happened in West Virginia. Most of the witnesses are in West Virginia. Dingess lives in Kentucky. Sygma is in Ohio. The only tie to New York is that some of MSS and RSS's employees and witnesses are there. Even MSS and RSS themselves are currently based in Wyoming and would have to travel a great distance either way to litigate the case. It is true that keeping the case in West Virginia will inconvenience MSS and RSS to a degree. Still, transferring it to New York serves only to inconvenience Dingess, Sygma, and many other witnesses just to slightly mitigate the inconvenience to MSS and RSS.

Fourth, the interests of justice are served by keeping the case together here in West Virginia. Separating the crossclaims and transferring them would fracture the case and create potentially overlapping and contradicting proceedings. For example, one court might find that

Sygma was negligent, while the other may say that Dingess was responsible for the accident. Then, the victorious party would take their win in one court and attempt to wield it in the other, creating a web of interconnected but incongruous decisions. This could potentially delay the case or disadvantage Dingess, Sygma, and even MSS and RSS. Maintaining the unity of the case allows for a cleaner resolution of issues and ensures that the case progresses justly.

The Court thus declines to transfer Sygma's crossclaims.

IV. CONCLUSION

For the foregoing reasons, the pending motion, (ECF No. 44), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 15, 2023

THOMAS E. JOHNSTON, CHIEF JUDGE