IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHRISTOPHER DINGESS,

        Plaintiff,

v.                              CIVIL ACTION NO. 2:22-cv-00275

THE SYGMA NETWORK, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Management Specialty Services 109, Inc.'s ("MSS") Motion for Summary Judgment on Plaintiffs' Claims. (ECF No. 262.) For the reasons set forth below, the motion is **GRANTED in part and DENIED in part**.

I.    BACKGROUND

This action arises out of a vehicle accident that occurred on March 10, 2022. (ECF No. 28 at 4, ¶ 13.) On that date, Plaintiff Christopher Dingess was driving on U.S. Route 119 in Mingo County, West Virginia. (ECF No. 262-10 at 42:08–11.) While on the road, Mr. Dingess observed a white truck travelling in the right lane at a pace slower than everyone else. (*Id.* at 45–46:18–05.) The truck was allegedly owned by Defendant The Sygma Network, Inc. ("Sygma") and driven by Defendant Vontize Conerly ("Conerly"). (*Id.* at 45–46:18–05; ECF No. 262-4 at 14–24.) Mr. Dingess was in the left lane and began to try to pass the Sygma truck. (ECF No. 262-10 at 46:05–06.) At that moment, the Sygma truck cut in front of Mr. Dingess, drove into the intersection, and

1

proceeded to make an unsafe U-turn. (*Id.* at 46:06–08; ECF No. 262-5 at 49–50:06–18.) During this maneuver, the Sygma truck blocked both northbound lanes of traffic. (ECF No. 262-12 at 13–15.) Mr. Dingess applied his brakes and swerved right to avoid colliding with the truck. (ECF No. 262-10 at 51:08–24.) Although Mr. Dingess avoided hitting the Sygma truck, his car crashed into a guardrail, went into the air, and crashed in a ravine. (*Id.* at 52–56:18–20.)

Following the crash, Conerly did not stop the truck, but instead, he proceeded on his way. (ECF No. 262-12 at 16:15–17.) There were at least two eyewitnesses who saw the crash, helped Mr. Dingess, and called 911. (*Id.* at 23:03–09, 18:16–22 .) On the day of the accident, amongst other injuries, Mr. Dingess bit off parts of his tongue, broke his C2 and C3 vertebra in his neck, sustained a maxillary fracture on the left side of his face, had ruptured blood vessels in his left eye, lost some teeth, and broke his nose. (ECF No. 262-10 at 67–68:21–08.) As a result of the crash, Mr. Dingess continues to suffer from physical, psychological, and emotional injuries. (*Id.* at 68–93:14–15; 95–97:08–03.)

Sygma and Management Specialty Services 109, Inc. ("MSS") have stipulated that the services agreement applicable to this matter is the October 2020 Services Agreement ("Agreement"). (ECF No. 262-3.) Under that Agreement, MSS, doing business as Regional Supplemental Services, Inc. ("RSS"),[1] provided personnel to Sygma at its Ohio location. (*Id. See* ECF No. 262-13 at 9–12:01–03.) Conerly was one of the drivers provided to Sygma by MSS. (ECF No. 262-13 at 8:21–23.)

Plaintiffs Christopher and Tiffany Dingess (collectively, "Plaintiffs") initiated this action by filing a complaint in Mingo County, West Virginia. (ECF No. 1.) Sygma removed the action

---

[1] RSS was recently dismissed with prejudice from this action on May 17, 2024, (ECF No. 269), based on a stipulation of dismissal filed by the parties, (ECF No. 255).

2

to this Court on June 30, 2022, invoking diversity jurisdiction under 28 U.S.C. § 1332. (*See* ECF No. 1.) Initially, only Sygma was named as a defendant. (ECF No. 1-1.) Plaintiffs filed their First Amended Complaint on August 2, 2022. (ECF No. 8).

On October 25, 2022, Sygma provided its first responses to written discovery. (ECF No. 22.) Sygma then supplemented those responses on December 2, 2022. (ECF No. 25.)

Approximately two weeks later, Plaintiffs moved to amend their complaint and Sygma did not object. (ECF No. 26.) Plaintiffs' Second Amendment Complaint ("SAC") was filed on January 9, 2023. (ECF No. 28.) With their SAC, Plaintiffs added additional defendants: Conerly, RSS, and MSS. (ECF No. 28.)

The SAC contains general allegations of Vicarious Liability and Joint Venture of Defendants. (ECF No. 28.) Additionally, Count One of the SAC is a claim of Negligence; Count Two is a claim of Grossly Negligent/Willful, Wanton & Reckless Operation of Motor Vehicle; Count Three is a claim of Negligent Failure to Render Aid; and Count Four is a claim of Grossly Negligent/Willful, Wanton and Reckless Failure or Refusal to Render Aid/Fleeing Scene of a Crash. (*Id.*)

MSS filed the pending Motion for Summary Judgment on May 14, 2024. (ECF No. 262.) Plaintiffs responded on May 28, 2024, (ECF No. 275), and MSS replied on June 4, 2024, (ECF No. 307.) On May 28, 2024, Sygma also responded to some of MSS's arguments, (ECF No. 278), and MSS replied to Sygma on June 4, 2024, (ECF No. 306). As such, this motion is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. In pertinent part, this rule states that a court should grant summary judgment if "there is no genuine issue

3

as to any material fact." Summary judgment should not be granted, however, if there are factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating these factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). "This burden may be met by use of the depositions and other discovery materials." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party meets its burden, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Should a party fail to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. DISCUSSION

Plaintiffs' SAC contains four counts of negligence against all of the defendants. (ECF No. 28.) Plaintiffs seek to hold Sygma and MSS liable for the actions of Conerly through vicarious liability. The issue of whether Sygma and/or MSS can be liable for Conerly's actions, turns on whether either or both of them were in an employer-employee relationship with him at the time of the underlying crash. In their motion for summary judgment, MSS contends that Sygma, not MSS, was Conerly's employer, and therefore, MSS is not vicariously liable for his actions. MSS also argues that Sygma and MSS were not operating in a joint venture.

#### A. Vicarious Liability

MSS primarily relies on two theories of vicarious liability in an attempt to show that Sygma is vicariously liable, and MSS is not: 1) under the Federal Motor Carrier Regulations ("FMCSR"), specifically 49 C.F.R. § 390.5, Sygma was the statutory employer of Conerly; and 2) Sygma was the common law employer of Conerly at the time of the crash. The Court begins with the statutory employer argument.

##### 1. Statutory Employer

Plaintiffs seek to establish that Conerly was MSS and Sygma's employee. (*See* ECF No. 28.) To defeat this, in addition to arguing that Conerly was not a common law employee of MSS, MSS also argues that under the Federal Motor Carrier Safety Act ("FMCSA") and the Federal Motor Carrier Safety Regulations ("FMCSR"), Conerly was the statutory employee of Sygma. (ECF No. 263.) Plaintiffs argue that both MSS and Sygma could be the employer under the federal regulations, (ECF No. 275), and Sygma argues that the FMCSA and its associated regulations are

5

irrelevant to the instant case because the FMCSA does not create a private cause of action, (ECF No. 278).

To resolve this issue, the Court must first decide whether 49 C.F.R. § 390.5 creates a private cause of action for tort liability for personal injuries. In doing so, the Court first reviews the pertinent regulations, then, surveys how other courts have addressed this issue.

49 U.S.C. § 31132(2) defines "employee" as "an operator of a commercial motor vehicle (including an independent contractor when operating a commercial vehicle) . . . or an individual not an employer, who . . . directly affects commercial motor vehicle safety in the course of employment." Similarly, 49 C.F.R. § 390.5, which defines terms for purposes of the FMCSR, states in pertinent part:

> Employee means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle).

The majority of courts considering this have found that the FMCSA and the FMCSR do "not create a private right of action for personal injuries." *Schramm v. Foster*, 341 F.Supp.2d 536, 547 (D. Md. 2004); *Beavers v. Victorian*, 38 F.Supp.3d 1260, 1267–71 (W.D. Okla. 2014) (concluding that the question of whether one party was operating as a "motor carrier" in relation to an "employee" "is relevant to the issue of the [motor carrier's] liability only if there exists a legal basis for attaching liability for personal injuries to that status."); *White v. Date Trucking, LLC*, No. ELH-17-1177, 2018 WL 2462921, at *3–5 (D. Md. 2018) (observing that no provision of the FMCSRs imply that the regulations are intended to preempt state common law with regard to vicarious liability); *Jones v. D'Souza*, No. 7:06-cv-00547, 2007 WL 2688332, at *7 (W.D. Va.

6

Sept. 11, 2007); *Terry v. Swift Transp.*, 1:16-cv-256, 2017 WL 1013074, *at 11–14 (M.D. N.C. March 14, 2017).  Notably, in *Edwards v. McElliotts Trucking, LLC*, Judge Chambers held that the plaintiff's statutory employee claim was not an independent claim apart from the plaintiffs' common law vicarious liability claim.  268 F.Supp.3d 867, 876 (S.D. W. Va. 2017).  Rather, as would be applicable here, the "'statutory employee' claim assumes an additive role in the common law analysis bolstering [Plaintiffs'] allegations that [Conerly] was a [Sygma/MSS] employee but not subsuming the traditional common law standard defining a master-servant relationship." *Id.*

The Court thus finds that, while they do not provide a stand-alone cause of action, the application of the FMCSA and FMCSRs are additional factors to consider in conducting the traditional common law analysis in this case.  However, for reasons discussed below, a proper analysis of the common law employer-employee relationship here, shows that there are genuine issues of material fact as to whether Conerly was a common law employee of MSS and/or Sygma.

The second question presented is whether both Sygma and MSS can be the statutory employers of Conerly.  They can be.  "Cases have acknowledged that a driver may have more than one employer, subject to joint and several liability."  *Puga v. About Tyme Transp., Inc.*, 227 F.Supp.3d 760, 765 (S.D. Tex. 2017) (citing *Zamalloa v. Hart*, 31 F.3d 911, 916 (9th Cir. 1994); *Simmons v. King*, 478 F.2d 857, 867 (5th Cir. 1973)).  *See also Morales v. OK Trans, Inc.*, No. 2:19-cv-00094, 2024 WL 1348405, at *4 ("A driver may have more than one statutory employer.")  While the record shows that Sygma was the statutory employer, there is no evidence in the record to suggest MSS was not also the statutory employer.  (*See* ECF No. 262-5 at 62–63:13–10.)

7

2.  *Common Law Employer*

The proponents of vicarious liability, in this case Plaintiffs, have the burden to make a *prima facie* showing that a master-servant relationship existed at the time of the accident. *Zirkle v. Winkler*, 585 S.E.2d 19, 22 (W. Va. 2003) (quoting *Sanders v. Georgia-Pacific Corp.*, 225 S.E.2d 218, 222 (W. Va. 1976)).[2]

To determine whether an agency relationship exists, "'one must examine the facts of a particular case.'" *Cunningham v. Herbert J. Thomas Mem'l Hosp. Ass'n*, 737 S.E.2d 270, 276 (W. Va. 2012) (quoting *Arnold v. United Cos. Lending Corp.*, 511 S.E.2d 854, 864 (W. Va. 1998)). All features of the employment relationship must be looked at together to determine if a "master-servant" relationship exists for the purpose of holding the employer liable under the doctrine of respondeat superior. *Id.* at 276–77. In West Virginia, there are four factors courts generally consider: "(1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative." *Cunningham*, 737 S.E.2d at 277 (quoting *Paxton v. Crabtree*, 400 S.E.2d 245, Syl. Pt. 5 (W. Va. 1990)). Regarding control, "it is the power over the process, not just the outcome, that demonstrates the essential feature of control." *Edwards*, 268 F.Supp.3d at 873. If evidence supporting any of the four factors, particularly control, is in conflict, or if more than one inference could be drawn from the evidence, then the question of whether a master-servant relationship exists, must go to the jury. *Cunningham*, 737 S.E.2d at 276–77. At the summary judgment phase, Plaintiffs are not required to prove their

---

[2] Having analyzed the employer-employee relationship under the relevant regulations, the Court now turns to whether Conerly was the common law employee of MSS. In its analysis of this issue, the Court applies West Virginia law since this is a diversity case. *Megaro v. McCollum*, 66 F.4th 151, 159 n.4 (4th Cir. 2023) ("A federal court sitting in diversity applies the substantive law of the state in which it sits.").

case. Rather, Plaintiffs need only present more than a "scintilla" of evidence supporting the claim such that a reasonable juror could find in Plaintiffs' favor.

As an initial matter, the Agreement labels the MSS personnel provided to Sygma as "employees of RSS." (ECF No. 262-3 at 1.) However, the characterization and labels used for the parties in their agreement are not determinative. *Zirkle*, 585 S.E.2d at 23. Turning to the determinative factor, control, the evidence before the Court is conflicting. Accordingly, there is a genuine issue of material fact. MSS contends that the driver was only the employee of Sygma at the time of the accident. (ECF No. 263 at 14.) To support this contention, MSS asserts that they "did not have control over the drivers once they were brought to Sygma's site," that "all matters concerning [the drivers'] tasks were dictated by Sygma," and that "Sygma had the ability to reject a driver or fire a driver during their shift, and MSS could do nothing about it." (*Id.*)

However, the record supports an inference that MSS retained meaningful control over the drivers supplied to Sygma. For instance, MSS supplied Sygma with one of their managers, Calvin Franks, to ensure all of the training and requirements that Sygma requested were being met at Sygma's site in Ohio. (ECF No. 262-5 at 61:04–08; ECF No. 275-1 at 16:7–8.) Mr. Franks operated as the "middleman" between MSS and Sygma. (ECF No. 262-4 at 46:03.) If drivers drove over a posted speed limit, different practices were followed depending on whether the driver was a Sygma driver or if they were supplied by MSS. (*Id.* at 69–70:10–13.) If they were supplied by MSS, then MSS's manager, Mr. Franks, received the communication from Sygma to discuss with the MSS driver. (*Id.*) Additionally, if Sygma had any additional routes to fill for a day, Sygma would not reach out to MSS drivers directly; rather, Sygma would go through Mr. Franks who would fill the additional routes with MSS drivers. (*Id.* at 76–77:18–13.) Further, if a customer

9

service issue came up while an MSS driver was completing their route, they would contact Mr. Franks, rather than Sygma dispatch. (ECF No. 262-4 at 45:02–08.)

On the other hand, the record also supports an inference that Sygma maintained control over the MSS drivers. For instance, Sygma prepared and controlled the routes driven by the MSS drivers, (*Id.* at 190–191:04–14), Sygma dispatched MSS drivers on assigned routes, (*Id.* at 42:12–23, 43:5–12, 43–45: 22–01, 86:13–24, 188–89:18–09), Sygma dispatch provided MSS drivers with all the materials and resources needed for them to complete their routes, (*Id.* at 183–188:01–05), and Sygma controlled which tractors and trailers were assigned to MSS drivers, (ECF No. 262-4 at 37–38:11–12, 189–90:20–03).

Viewing the evidence in the light most favorable to Plaintiffs, the record provides conflicting evidence regarding who possessed the power of control over Conerly. A reasonable juror could find that either MSS or Sygma, or both, retained that power. Therefore, the issue of whether Conerly was an employee of MSS and/or Sygma must go to the jury.

B.  *Joint Venture between MSS and Sygma*

As an alternate theory to hold MSS liable, Plaintiffs contend that MSS is vicariously liable for the actions of Conerly insofar as MSS and Sygma were in a joint venture.

Joint ventures are "an association of two or more persons" to "carry out a single business enterprise for profit," for which purpose the parties "combine their property, money, effects, skill, and knowledge." *Armor v. Lantz*, 535 S.E.2d 737, 742 (W. Va. 2000). "'Another essential ingredient to an allegation of joint venture is control of the joint venture by the participants.'" *Young v. Apogee Coal Co. LLC*, No. 2:12-cv-01324, 2014 WL 1900791, at *4 (S.D. W. Va. May 13, 2014) (quoting *Croye v. GreenPoint Mortgage Funding, Inc.*, 740 F.Supp.2d 788, 800 (S.D.

10

W. Va. 2010). *See also Robinson v. Quicken Loans, Inc.*, 988 F.Supp.2d 615, 635–36 (S.D. W. Va. 2013) (quoting *Armor*, 535 S.E.2d at 737) ("Joint venturers should also have 'equal control over the common commercial pursuit,' though 'the control required … is not actual physical control, but the legal right to control the conduct of the other with respect to the prosecution of the common purpose.'"). These sorts of ventures require a contract, but it "may be oral or written, express or implied." *Id.* If the aforementioned elements are shown, the members of the venture are "jointly and severally liable for all obligations pertaining to the venture, and the actions of the joint venture bind the individual co-venturers." *Id.* at 743. To succeed on this claim, Plaintiffs need to produce facts demonstrating that there is a real and binding "agreement" to "share in the profits and losses" of the enterprise. *Pyles v. Mason Cnty. Fair, Inc.*, 806 S.E.2d 806, 812 (W. Va. 2000). While an agreement "for the sharing of profits is generally considered essential to the creation of a joint adventure," "the sharing of losses is not essential." *Armor*, 535 S.E.2d at 743.

Generally, the question of whether two entities were involved in a joint venture is a question for the jury. *Bowers v. Wurzburg*, 528 S.E.2d 475, 484 (W. Va. Dec. 16, 1999). However, here, it appears that Plaintiffs can prove no set of facts to support their claim such that a reasonable trier of fact could find for Plaintiffs. *See Robinson v. Quicken Loans, Inc.*, 988 F.Supp.2d 615, 635–36 (S.D. W. Va. 2013). Clearly missing from the record is evidence of control and profit sharing.

First, it is not clear that there is a "common commercial pursuit" that both Sygma and MSS were jointly working toward. Pursuant to the Agreement, MSS simply provides drivers to Sygma who then drive Sygma-owned tractors and trailers or Sygma-leased tractors and trailers. (ECF No. 262-4 at 168:10–14.) There is no evidence that Sygma was working with MSS exclusively to

11

obtain drivers or that Sygma was MSS's only client. This is simply a case where one party is lending drivers to another for that other to complete their tasks. *See Robinson*, 988 F.Supp.2d at 636 (denying summary judgment when, amongst other factors, two entities allegedly entered into a contract agreeing to engage in a single business enterprise—the sale of a particular product—and one entity had an exclusive relationship with the other).

Second, even if there was a "common commercial pursuit," the record shows that Sygma did not have any legal right of control over MSS, and MSS did not have any control over Sygma. (ECF No. 262-5 at 96-97:06–11.) While Sygma could choose whether or not to accept drivers that MSS provided, Sygma had no control over the drivers that MSS retained for or sent to Sygma. (*Id.* at 96–97:21–11.) Similarly, MSS had no control over which truck was assigned to which driver, (ECF No. 262-4 at 189–90: 20–03), or the route that the driver took or the order of the routes, (*Id.* at 190:04–09; 48:01–05; ECF No. 262-12 at 61–62:24–01). The record shows no evidence of either Sygma or MSS having the right to "control the conduct of the other with respect to the prosecution of the common purpose." *Robinson*, 988 F.Supp.2d at 635–36. *See Wiles v. West Virginia Univ. Hosps., Inc.*, No. 19-0192, 2020 WL 4384235, at *5 (W. Va. July 31, 2020) (finding no error where the circuit court found no joint venture based on the petitioners' failure to prove that either party of the alleged joint venture had the power to control the practices and operations of the other). Indeed, the evidence is contrary to that. *See Young*, 2014 WL 1900791, at *5 (S.D. W. Va. May 13, 2014) (finding no joint venture when the defendants associated and contracted to operate a specific mine for profit but one defendant did not have any legal right of control over the venture).

12

Lastly, even if MSS and Sygma were able to control one another, there is no evidence suggesting that they shared profits with one another. In fact, the evidence shows that Sygma paid MSS a previously agreed upon rate for the drivers MSS provided to Sygma. (ECF No. 262-4 at 120–21:05–05; 151:02–20.) In turn, MSS paid the drivers. (ECF No. 262-3; ECF No. 262-5 at 86:18–20.) *See Armor*, 535 S.E.2d at 744–46 (declining to find a joint venture between local and visiting counsel, in part because the fee agreement involved only the payment of a flat fee from the visiting counsel to the local counsel). Therefore, since the rates were set without any consideration of Sygma's profits or losses during the duration of the Agreement, the profits or losses Sygma received or incurred had no bearing on whether MSS was paid. Thus, there is no evidence of profit sharing.

Although the facts of this case indicate cooperation between MSS and Sygma and a likely business relationship, the facts do not indicate that the relationship between the two companies was a joint venture. Plaintiffs have failed to raise a triable issue of fact as to whether a joint venture existed. Therefore, MSS is entitled to judgment as a matter of law on Plaintiff's theory.

*C. Negligence/Gross Negligence – Counts Three and Four*

MSS also moves for summary judgment on Counts Three and Four of the SAC. (ECF No. 263.) In their SAC, Plaintiffs allege Conerly negligently failed to render aid to Mr. Dingess, in violation of West Virginia Code § 17C-4-3. Plaintiffs further claim grossly negligent/willful, wanton and reckless failure or refusal to render aid/fleeing the scene of a crash. MSS argues that Conerly was not involved in the crash, that Conerly did not have knowledge of the crash, that Mr. Dingess' injuries were not apparent to Conerly, that not rendering aid did not exacerbate Mr. Dingess' injuries, and that there is no basis for civil liability under the statute.

13

To succeed on a negligence claim in West Virginia, a plaintiff must establish, by a preponderance of the evidence, that first, the defendant owed the plaintiff a duty; second, the defendant negligently breached that duty; and third, the defendant's breach proximately caused the plaintiff's injuries. *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016) (quoting *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939)). "Gross negligence, in contrast to ordinary negligence, requires a greater showing of wrongdoing than merely a breach of duty." *Hood v. Farmer*, No. 2:22-cv-00265, 2023 WL 1971343, at *8 (S.D. W. Va. Feb. 13, 2023) (citing *Courtland Co., Inc. v. Union Carbide Corp.*, No. 2:19-cv-00894, 2020 WL 5047131, at *15 (S.D. W. Va. Aug. 26, 2020)).

West Virginia Code § 17C-4-1(a) states, in pertinent part:

> [t]he driver of any vehicle involved in a crash resulting in the injury . . . of any person shall immediately stop such vehicle at the scene of the crash or as close to the scene as possible and return to and remain at the scene of the crash until he or she has complied with the requirements of § 17C-4-3 of this code.

West Virginia Code § 17C-4-3(b) imposes a duty and provides, in pertinent part, that "[t]he driver of any vehicle involved in a crash resulting in injury to . . . any person, if physically able to do so, shall render aid to any person injured in such crash reasonable assistance . . . if it is apparent that such treatment is necessary."

The Supreme Court of Appeals of West Virginia has held that under both statutes, while knowledge of the accident is required, actual knowledge of the injury resulting is not required. *State v. Tennant*, 319 S.E.2d 395, 401 (W. Va. 1984). Rather, it is sufficient if the driver involved in the crash "reasonably should have known of the injury . . . from the nature of the accident." *Id.* Further, "it is not a requirement that a defendant's vehicle make direct physical contact with the other vehicle or person whose death [or injury] was proximately caused by the crash." *State v.*

14

*McClain*, 880 S.E.2d 889, 898 (W. Va. 2022).  In *McClain*, a collision resulted when a defendant's tractor-trailer clipped an oncoming tractor-trailer on a narrow road, causing the oncoming tractor-trailer to collide with a motorist.  880 S.E.2d at 892.  In determining the meaning of the language "involved in a crash," the *McClain* Court concluded that a statutory duty to stop and render aid under West Virginia Code § 17C-4-3 applies to motorists who proximately cause injury to another, regardless of any direct physical contact.  *Id.* at 898–99.

First, while West Virginia Code § 17C-4-3 has been used to impose criminal liability on individuals, it has also served as the basis for liability in numerous civil suits in West Virginia.  *See West Virginia Heating & Plumbing Co. v. Carroll*, No. 22-ICA-167, 2023 WL 3579092 (W. Va. 2023); *Figaniak v. Fraternal Ord. of Owl's Home Nest*, No. 5:15-cv-111, 2017 WL 2637397 (N.D. W. Va. June 19, 2017); *Thomas v. Nw. Concrete Prods., Inc.*, No. 2:16-cv-03892, 2018 WL 3543077 (S.D. W. Va. July 23, 2018).  Therefore, there is a basis for Plaintiffs bringing this claim in their civil suit.

Second, there is conflicting evidence in the record as to whether Conerly had actual knowledge that Mr. Dingess crashed.  One of the eyewitnesses testified that it would have been impossible for Conerly not to have known of the crash due to the loud noise produced when Mr. Dingess' car crashed through the guardrail.  (ECF No. 262-12 at 16:03–14.)  Additionally, an expert who evaluated this case and saw video footage from the cab of the truck Conerly was driving testified that Mr. Dingess was visible in the passenger mirror of the truck in the seconds leading up to the crash.  (ECF No. 275-1 at Ex. 3, pp. 7–14.)  The expert ultimately stated that "[t]here was no indication to suggest either way that Conerly did or did not see Dingess strike the guardrail." (*Id.* at p. 8.)  Since there is conflicting evidence of whether Conerly had knowledge of the crash,

15

it cannot be decided by the Court at this time whether Conerly reasonably should have known of the extent of Mr. Dingess' injuries resulting from the crash he may not have seen.

Third, there is evidence in the record that while Conerly did not make physical contact with Mr. Dingess causing Mr. Dingess to crash, Conerly was involved in the crash. In fact, there is evidence that Conerly proximately caused the accident when he attempted to make an unsafe U-turn in front of Mr. Dingess. (*See* ECF No. 262-5 at 52–54:22–04, 55–60:17–06, 82–83:15–07; ECF No. 262-10 at 45–56:16–20; ECF No. 262-11 at 13–16:18–01, 20:02–11; ECF No. 262-12 at 13–15:12–24, 20–21:11–17; ECF No. 264-1.)

However, and most importantly, while there is evidence that Conerly caused the accident, there is no evidence in the record that Conerly's failure to stop and help, or simply stop, caused any of Mr. Dingess' recoverable injuries sustained from the crash. This is an essential element in the negligence/gross negligence analysis. The only injuries Mr. Dingess sustained from Conerly failing to stop are "crash-related irritation, anger and frustration." (ECF No. 275-1 at Ex. 5, p. 2.) This is because other people at the scene stepped in and did exactly the thing Conerly should have done—help and call 911. (ECF No. 262-12 at 23:03–09, 18:16–22.) This is significant for two reasons. First, Plaintiffs do not allege, nor is there any evidence to suggest, that Conerly would have been able to reach Mr. Dingess quicker than the witnesses did. Second, and relatedly, there is no indication that any significant amount of time elapsed between when the accident occurred and when the ensuing aid and subsequent 911 call took place. (ECF No. 262-11 at 23–24:21–10; ECF No. 262-12 at 17–18:19–22.)

Similarly, since Plaintiffs have not produced any evidence that Conerly's act of failing to stop and render aid caused any additional injuries or exacerbated any post-crash injuries Mr.

16

Dingess had, Plaintiffs also fail to establish damages. Although Plaintiffs have cited the mental anguish Mr. Dingess suffered post-accident, (ECF No. 275-1 at Ex. 5, p. 2), generally, in West Virginia, "damages for mental distress cannot ordinarily be recovered for a negligent act that does not produce some physical injury." *Whitehair v. Highland Memory Gardens, Inc.*, 327 S.E.2d 438, 463 (W. Va. 1985) (citing *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 701–02 (W. Va. 1982)). *See Lambert v. Brewster*, 125 S.E. 244, 250 (W. Va. 1924) (upholding negligence verdict when the plaintiff suffered nervous shock followed by a miscarriage). Here, Plaintiffs produce no evidence that there is any physical injury resulting from Conerly's failure to render aid accompanying the "crash-related irritation, anger and frustration." (ECF No. 275-1 at Ex. 5, p. 2.)

Since Plaintiffs have failed to show any evidence that Mr. Dingess was in a worse position than he would have been had Conerly stopped to render aid or stay at the scene, summary judgment is granted to MSS on Counts Three and Four of the SAC.

### IV. CONCLUSION

For the foregoing reasons, MSS's Motion for Summary Judgment on Plaintiffs' Claims, (ECF No. 262), is **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 31, 2024

_____
THOMAS E. JOHNSTON, CHIEF JUDGE